## EVANGELISCHER DIAKONISSEN VEREIN OF THE MINNESOTA DISTRICT OF THE GERMAN EVANGELICAL SYNOD OF NORTH AMERICA (HOSPITAL) v. TOWN OF CANNON CITY.[1]

March 2, 1934.

No. 29,795.

A. B. Childress, for appellant.
Smith & Coughlin, for respondent.

HILTON, Justice.

Action by a private hospital association to recover a sum of money claimed to be due it for services rendered in caring for one Lawrence Chester, who had a settlement in the defendant town. The case was tried to the court without a jury and judgment ordered for defendant. The appeal is from an order denying plaintiff's motion for a new trial.

In the late evening of August 11, 1932, Chester called on Dr. Haesley at his office in Faribault. The doctor examined him and concluded that an immediate operation was necessary for the removal of the appendix. Chester was taken to plaintiff's hospital in that city and operated upon that night, his appendix being then

[1]Reported in 253 N. W. 97.

removed. His condition did not improve as expected, and on September 15 he underwent another operation, after which he began to improve and was discharged from the hospital on October 24. Sometime between the second operation and Chester's discharge from the hospital, the hospital authorities, having ascertained that Chester had no money with which to pay for the services rendered, sent Mrs. Chester to the town board with an application to that board that it pay the hospital bill, then estimated at $200. The board met, considered the matter, and refused to pay the bill. Mrs. Chester was informed of such refusal, she in turn advised the hospital authorities thereof, and this action followed.

The court among other things found: (a) That Chester received hospital care and treatment in plaintiff's hospital of the reasonable value of $261; (b) that such care and treatment was not furnished at the instance and request of defendant and that defendant never offered or agreed to pay therefor; (c) that at the time Chester was taken to plaintiff's hospital no emergency existed, with reference to the physical condition of Chester, requiring his removal to the hospital without previous notice and application for relief to defendant under the laws regulating the relief of the poor; (d) that at the time of his removal to the plaintiff's hospital Chester was not a pauper and the defendant town was not legally liable for his care and treatment therein.

The only question we need to consider is whether or not the court was justified in finding that Chester was not a pauper within the contemplation of the statute hereinafter referred to. If that finding was correct, then the question as to whether there was an emergency need not be considered.

The statutes (1 Mason Minn. St. 1927) relative to the care of poor persons are:

§ 3157. "Every poor person who for any reason is unable to earn a livelihood shall be supported by his children, parents, brothers and sisters, grandchildren, or grandparents * * *."

§ 3159. "When any such poor person has none of the relatives named in § 3067 [now § 3157], or they are not of sufficient ability, or refuse or fail, to support him, he shall receive such support or

relief as the case may require from the county, town, city, or village in which he has a settlement at the time of applying therefor, as hereinafter provided."

§ 3184. "In counties having the town system, the town boards and city and village councils shall be superintendents of the poor. All applications for aid shall be made to such boards or councils, which shall grant such relief as they deem necessary, by paying for the board and care of the applicants, providing transportation to their homes, paying rent, furnishing provisions, clothing, fuel and medical attendance, and burying the dead. They shall pay no cash to any poor person, and shall allow no bill for goods furnished or services rendered to him, unless a member of such board or council shall certify in writing that the account is correct and just; that the goods or services were necessary for his relief, were actually delivered or rendered, and were of good quality; and that the prices charged are reasonable. * * *"

At the time of the first operation Chester was 26 years of age, had a wife and four children, the oldest child being six years of age. Chester and his family had then lived in the defendant town for three years; had never been in need of or applied to the town for relief. No notice of Chester's condition was given, or application for aid made, to the town board other than the one hereinbefore referred to, which was for payment only of the hospital bill. The town board had no knowledge of Chester's presence in the hospital.

At the time Chester entered plaintiff's hospital he was a tenant on a 160-acre farm, operating it on a half share basis. His tenancy expired September 20, 1932. He was the owner of a one-half interest in 24 small pigs, 3 sows, and 12 heifers; received one-half the income from 16 cows belonging to the owner of the farm. In addition to milk, eggs, and other farm products, his family received fruit raised on the farm. He owned 2 mules, 100 chickens, and sufficient farm machinery to operate the farm, including a grain binder, corn binder, cultivator, harrow, plow, wagon, Fordson

tractor, and an old model T Ford automobile. The machinery was all old, having been purchased second-hand, except the tractor, which had been purchased new some seven years before. The machinery was, however, apparently in workable condition. There were chattel mortgages on all the property owned by Chester. While he was in the hospital his wife sold some of the pigs and cattle, applying the proceeds therefrom on one of the mortgages, reducing it from $200 to $35. There was a second mortgage of $350 held by his wife's father, who also had a $240 mortgage on the tractor. On September 20 the owner of the farm took away the cows belonging to him. Chester's family continued on the farm until November 22, 1932.

We reach the conclusion that there was ample evidence warranting the finding that Chester was not at the time stated a poor person within the provisions of the statute. In all cases where a person is entitled to public relief it should be given seasonably and in a reasonable amount. In these unfortunate times many worthy, hard working citizens of the state, taxpayers as well as those who are not, have found it necessary to mortgage their property, both real and personal. The now overburdened taxpayers, many of whom are in financial distress, should not be unnecessarily burdened by and made to respond in further taxes. The fact that property is mortgaged does not diminish its earning capacity or make it useless; it may be used to as good advantage as though it were unencumbered. A person situated as Chester was at the time of his entry into the hospital, having the possession and use of the enumerated mortgaged property, and receiving half the crops raised on a 160-acre farm and half the income from 16 cows, cannot be said to be a "poor person" as defined by the statute. Cases cited by appellant are not in point, for therein the facts disclosed, and the trier of fact found, that the person involved was one entitled to relief.

Affirmed.